

U.S. Department of Justice

United States Attorney
District of Maryland
Southern Division

| | | | |
|---|---|---|---|
| Paul A. Riley<br>Assistant United States Attorney<br>Paul.Riley@usdoj.gov<br>JTM 10.25.21 | Mailing Address:<br>36 S. Charles Street, 4th Floor<br>Baltimore, MD 21201 | Office Location:<br>36 S. Charles Street, 4th Floor<br>Baltimore, MD 21201 | DIRECT: 410-209-4959<br>MAIN: 410-209-4800<br>FAX: 410-962-0693 |

October 25, 2021

James Crawford, Esq.
Mark Sobel, Esq.
JC Law
999 Corporate Boulevard, Suite 100
Linthicum, Maryland 21090

    Re:    United States v. William Brown IV,
             Criminal No. CCB-20-257

Dear Counsel:

        This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, William Brown IV (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by November 1, 2021, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

    1.    The Defendant agrees to plead guilty to Counts 1 and 7 of the Superseding Indictment, which charge the Defendant with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a)(1). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses (Production of Child Pornography)

    2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the dates specified in Counts 1 and 7 in the Superseding Indictment, in the District of Maryland, the Defendant

        a.    Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

        b.    For the purpose of producing a visual depiction of such conduct; and

        c.    The Defendant had reason to know that the visual depiction would be

transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Counts | Statute | Min. Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1, 7 | 18 U.S.C. § 2251(a)(1) | 15 years | 30 years | Life | $250,000 | $100, $5,000 (18 U.S.C. § 3014) |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Special Assessments: The Court must order the Defendant to pay a special assessment pursuant to 18 U.S.C. § 3013 and may order additional special assessments for certain convictions pursuant to 18 U.S.C. §§ 3014 and 2259A.

d. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664, and 2259.

e. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

f. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

g. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is

Rev. August 2018

nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Offender Registration

4. The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

5. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

Rev. August 2018

  d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

  e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

  6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

Rev. August 2018

7. This Office and the Defendant stipulate and agree to the Stipulation of Facts set forth in Attachment A, which is incorporated by reference herein. Furthermore, this Office and the Defendant agree that the Statement of Facts establishes the commission of additional offenses by the Defendant that shall be treated as if the Defendant had been convicted of additional counts charging those offenses.

<u>Counts One, Two (Relevant Conduct), Three (Relevant Conduct), Six (Relevant Conduct):</u>

    a. The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

    b. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a two (2) level increase because the victim of the offense had attained the age of 12 years but had not attained the age of 16 years (Subtotal: 34).

    c. Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. (Subtotal: 36).

<u>Count Four (Relevant Conduct), Five (Relevant Conduct), Eight (Relevant Conduct), Nine (Relevant Conduct):</u>

    d. The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

    e. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a two (2) level increase because the victim of the offense had attained the age of 12 years but had not attained the age of 16 years (Subtotal: 34).

    f. Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct (Subtotal: 36).

<u>Count Seven:</u>

    g. The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

    h. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a two (2) level increase because the victim of the offense had attained the age of 12 years but had not attained the age of 16 years (Subtotal: 34).

    i. Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the defendant was a parent, relative, or legal guardian of the minor involved in the offense (Subtotal: 36).

Grouping:

j.     This Office and the Defendant agree that as detailed in Attachment A, because the defendant produced images of child pornography of at least two victims, there are two groups for production of child pornography and therefore two units.

k.     Pursuant to U.S.S.G. § 3D1.4, the total number of units is 2 and therefore the highest offense level (36) is increased by two (2) levels. (Subtotal: 38).

Chapter Four Enhancement:

l.     Pursuant to U.S.S.G. § U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. (Subtotal: 43).

m.     Pursuant to U.S.S.G. § U.S.S.G. § 3C1.1, there is a two (2) level increase because the Defendant attempted to obstruct or impede, the administration of justice with respect to the investigation and prosecution of the instant offenses of conviction, and (2) the obstructive conduct related to (A) the Defendant's offenses of conviction and any relevant conduct; or (B) a closely related offense. (Subtotal: 45).

n.     This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

o.     Accordingly, the anticipated adjusted base offense level is **42**.

8.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

9. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

10. Subject to paragraph 11 below, at the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Rule 11(c)(1)(C) Plea

11. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of between **216 months (18 years)** and **324 months (27 years)** of imprisonment in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. And the parties each reserve the right to argue for any reasonable term of supervised release and fine. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

   b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of

Rev. August 2018

7

imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

      i.    The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

      ii.    This Office reserves the right to appeal any sentence below a statutory minimum.

    c.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

13.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

14.    Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

    a. A Cyber Power PC, SN: ET1350-2281;
    b. A Samsung Note 9 smartphone, S/N: 803VTEY0675476;
    c. Asus Model N580G Notebook PC, S/N: J9N0CV116577398;
    d. A SanDisk Cruzer Hard Drive, S/N: 4C5310015705121 17250; and
    e. A Blue 2014 Chrysler Town & Country Minivan bearing Maryland Registration 9CW4081.

15.    The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

16.    The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such

title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

17.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

18.     Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. § 3664, and 18 U.S.C. § 2259, the Defendant agrees to make full restitution to all minor victims of his offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the Defendant agrees to pay restitution to any of his minor victims, for the entire scope of his criminal conduct, including but not limited to all matters included as relevant conduct. The Defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal and/or state law committed by the defendant, including any contact sexual offense. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

19.     The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Additional Special Assessments in Sex Crimes Cases

19.     Pursuant to 18 U.S.C. § 3014 (the Justice for Victims of Trafficking Act "JVTA"), since the offense of conviction is under Chapter 77 (relating to peonage, slavery, and trafficking in persons), 109A (relating to sexual abuse), 110 (relating to sexual exploitation and

Rev. August 2018

9

other abuse of children), 117 (relating to transportation for illegal sexual activity and related crimes), or 274 (related to human smuggling), the Defendant must also pay an additional special assessment of **$5,000**, unless the Defendant is indigent.

20. Assessments in Child Pornography Cases: Pursuant to 18 U.S.C. § 2259A (the Amy, Vicky, and Andy Child Pornography Victim Assistance Act "AVAA"), in addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess-(1) not more than $17,000 on any person convicted of an offense under section 2252(a)(4) or 2252A(a)(5); (2) not more than $35,000 on any person convicted of any other offense for trafficking in child pornography; and (3) not more than $50,000 on any person convicted of a child pornography production offense.

### Defendant's Conduct Prior to Sentencing and Breach

21. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

22. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

23. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations

under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

24. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Jonathan F. Lenzner,
United States Attorney

Paul Riley
Assistant United States Attorney
Joyce King
Special Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11/12/2021
Date

William Franklin Brown IV

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

11/12/2021
Date

James Crawford, Esq.
Mark Sobel, Esq.

Rev. August 2018

11

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Defendant, William Franklin Brown IV, born August 1980, is a resident of Frederick Maryland. Over a period of at least six months, beginning in August 2019 and continuing until January 2020, Defendant repeatedly sexually abused Jane Doe 1 (born December 2004) and produced numerous sexually explicit images of her. Defendant repeatedly photographed and video-recorded himself sexually abusing Jane Doe 1 and likewise, while posing as a third-party called "GG" and others, repeatedly coerced her to send sexually explicit videos and images to him over the Internet-based communication service Telegram.

Moreover, over a period of approximately two years, Defendant produced images of child pornography of his daughter, Jane Doe 2 (born in March 2005). He filmed her using a covert camera in bathroom she used at Defendant's home. He likewise posed online as GG and repeatedly directed Jane Doe 2 to send him photographs of herself engaging in sexually explicit conduct over the Telegram app, which she did.

### Defendant's Sexual Exploitation of Jane Doe 1

In the summer of 2019, while posing as a teenage boy, Defendant first met Jane Doe 1 online, and began a relationship with her that included the exchange of sexually explicit photographs. Defendant sent Jane Doe 1 photographs of a teenage boy engaged in sexually explicit conduct that he had acquired online and coerced Jane Doe 1 to send sexually explicit photographs of herself.

Moreover, posing as GG—an adult film actor and musician who resides in Miami, Florida—Defendant again contacted Jane Doe 1 online. Thereafter, Defendant repeatedly sent Jane Doe 1 sexually explicit photographs of GG that he had previously obtained on the Internet and coerced Jane Doe 1 to send him sexually explicit photographs of herself via the Telegram app.

Jane Doe 1 eventually discovered that Defendant was posing as a teenage boy, and Defendant ultimately disclosed his age and true identity to her. Defendant and Jane Doe 1 eventually met in person. Beginning in September 2019 Defendant repeatedly engaged in vaginal and oral intercourse with Jane Doe 1 on numerous occasions (approximately four times per week) at various locations in Frederick, Maryland, including his home located at 151 West Main Street, New Market, Maryland 21774, in his van (a Blue 2014 Chrysler Town & Country Minivan bearing Maryland Registration 9CW4081), and the home of Jane Doe 1. Defendant would frequently use a mobile device to take photographs and videos of his abuse of Jane Doe 1, such as the depictions charged in Counts One through Three of the Superseding Indictment, which depict respectively: (1) Defendant placing a vibrator on Jane Doe 1's exposed vagina; (2) Defendant placing his penis in Jane Doe 1's vagina; and (3) Defendant placing his penis in Jane Doe 1's mouth.

Defendant likewise coerced Jane Doe 1 to send him sexually explicit photographs and videos of herself and would send her depictions of himself masturbating. Defendant also used the online video-teleconference system Skype to view live-stream video of Jane Doe 1 engaging in sexually explicit conduct.

Defendant provided Jane Doe 1 various sex toys, lingerie, and a phone to use to communicate him without her parents' knowledge.

Moreover, without the knowledge or consent of Jane Doe 1, Defendant used an online monitoring tools called Kidlogger and Team Viewer to track Jane Doe 1's activity online and capture screenshots and videos of her activity, including any communications she had with others concerning him or GG.

### Defendant's Sexual Exploitation of Jane Doe 2

Defendant, again posing as GG, met Jane Doe 2 online when she as approximately 12-13 years old. Over a period of years, Defendant, posing as GG, coerced Jane Doe 2 to send him sexually explicit photographs of herself. On one occasion, Defendant, posing as GG, told Jane Doe 2 that if she did not comply with his demands for sexually explicit photographs, that GG would hack into her father's bank account. The following day, Defendant falsely told Jane Doe 2 that someone had hacked into his bank account. In response, Jane Doe 2 sent Defendant, posing as GG, the sexually explicit photos he demanded via the Telegram app.

Furthermore, on several occasions, Defendant, posing as GG, provided Jane Doe 2 cash in exchange for sending him sexually explicit photographs, which he hid behind the recycling bin at their residence. Jane Doe 2 sent Defendant, posing as GG, numerous depictions of herself engaged in sexually explicit conduct, including the depictions charged in Counts Eight and Nine of the Superseding Indictment; they depict Jane Doe 2 touching and penetrating her exposed vagina.

Between June 2018 and September 2019, Defendant likewise installed a covert camera in a bathroom used by Jane Doe 2 without her knowledge. That camera repeatedly captured images of Jane Doe 2 nude with her vagina and breasts exposed. Defendant eventually downloaded these images his Samsung Note 9 smartphone, S/N: 803VTEY0675476. During the same timeframe, Defendant likewise installed a covert camera in Jane Doe 2's bedroom for the purpose of capturing images of her nude.

Defendant, posing as GG, also sent Jane Doe 2 various sex-related items in the mail, including lingerie, sex toys and a DVD containing adult pornography from a retailer called Adam & Eve. And Defendant himself gave Jane Doe 2 various sex toys and told her how to use them.

Moreover, without the knowledge or consent of Jane Doe 2, Defendant used the online monitoring tool Kidlogger to track Jane Doe 2's activity online and capture screenshots and videos of her activity, including any communications she had with GG or others.

### Search Warrant Execution and Defendant's Arrest

On February 3, 2020, law enforcement arrested Defendant and that same day executed a search and seizure warrant at Defendant's residence in Frederick, Maryland, which was located at 151 West Main Street, New Market, Maryland 21774. On February 4, 2020, law enforcement executed a second search and seizure warrant at the residence. During the execution of the warrants, law enforcement seized, among other things, the following items belonging to

Defendant: a Cyber Power PC, SN: ET1350-2281; a Samsung Note 9 smartphone, S/N: 803VTEY0675476; a SanDisk Cruzer Hard Drive, S/N: 4C531001570512117250, which was hidden within a hollowed-out book; and a Asus Model N580G Notebook PC, S/N: J9N0CV116577398, Defendant's work computer.

All of these items were manufactured outside of the District of Maryland. Moreover, the Internet is a facility of interstate commerce.

The seized items were forensically examined. The CyberPower PC contained hundreds of depictions of Jane Doe 1 engaged in sexually explicit conduct, including the depictions referenced in Counts One, Two, Four of the Superseding Indictment. Moreover, it contained numerous images of Jane Doe 2 engaged in sexually explicit conduct, including the depictions referenced in Count Eight of the Superseding Indictment. The PC likewise contained screenshots of numerous conversations between Defendant, posing as GG, and Jane Doe 1; screenshots of numerous conversations between Defendant and Jane Doe 1, in which both of their faces are visible; numerous artifacts from the Telegram, Kidlogger, and Team Viewer applications.

Defendant's Samsung Note 9 smartphone, S/N: 803VTEY0675476 likewise contained hundreds of depictions of Jane Doe 1 and Jane 2 engaged in sexually explicit conduct, including the depictions referenced in Counts Three and Six of the Superseding Indictment. Moreover, it contained five images of Jane Doe 2's body and exposed vagina, which were captured by the covert camera installed by Defendant in Jane Doe 2's bathroom, as referenced in Count Seven of the Superseding Indictment.

The Samsung smartphone likewise contained screenshots of numerous conversations between Defendant, posing as GG, and Jane Doe 1; screenshots of numerous conversations between Defendant and Jane Doe 1, in which both of their faces are visible; and numerous artifacts from the Telegram and Kidlogger applications.

The phone likewise reflected that Defendant had repeatedly accessed GG's webpage on onlyfans.com to obtain nude photos of GG, as well as other sites referring to GG, and sites regarding catfishing—*i.e.*, creating a fictitious online persona on social media to target a specific victim.

Defendant's work computer, the Asus Model N580G Notebook PC, S/N: J9N0CV116577398, contained approximately 40 images of Jane Doe 1 and Jane Doe 2 engaged in sexually explicit conduct, including the depictions referenced in Counts Five and Nine of the Superseding Indictment.

Finally, the SanDisk Cruzer Hard Drive, S/N: 4C531001570512117250, which was hidden within a hollowed-out book at Defendant's residence, contained approximately 100 images of minors, including prepubescent minors, engaged in sexually explicit conduct.

Defendant admits that he used a facility and means of interstate commerce (the above-referenced Samsung mobile device and above-referenced computers) to persuade, induce, entice and coerce Jane Doe 1 and Jane Doe 2 to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.

Defendant further admits that on or about May 15, 2021, he wrote a letter to Jane Doe 2— intercepted by law enforcement—in which he attempted to influence Jane Doe 2's potential

testimony in connection with any trial in this matter. For instance, Defendant falsely stated that he didn't see "what you were getting involved with" and that "I would have never agreed to take the 'fall' for [GG] if I had known." Defendant likewise stated that "[t]he last thing I want to do is drag you and [Jane Doe 1] through the court system" and that "I hope you know me better to believe that I've done what they are saying. I would never do anything to hurt any of my children."

SO STIPULATED:

_____
Paul Riley
Assistant United States Attorney
Joyce King
Special Assistant United States Attorney


_____
William Franklin Brown IV
Defendant


_____
~~James Crawford~~, Esq. Mark F. Sobel, Esq.
Counsel for Defendant